No. 98-316

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 2

297 Mont. 467

993 P.2d 677

MERRILL S. HAWLEY and CAROL HAWLEY,

husband and wife and partners in HAWLEY OIL,

formerly doing business as HAWLEY OIL COMPANY

and Ted Hawley Company, HAWLEY HYDROCARBONS

and HAWLEY NORTHRUP, Montana Partnerships;

KIM HAWLEY and WAD HAWLEY, Individually

and doing business as GALLUP CITY OIL COMPANY,

a Montana Partnership,

Plaintiffs and Respondents,

v.

BOARD OF OIL AND GAS CONSERVATION,

DEPARTMENT OF NATURAL RESOURCES

AND CONSERVATION, STATE OF MONTANA,

DAVID W. BALLARD and THOMAS P. RICHMOND,

Defendants and Appellants.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Pondera,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Hon. Joseph P. Mazurek, Attorney General; Robert M. Gentry, Assistant

Attorney General, Natural Resource Damage Program, Helena, Montana

For Respondents:

Kim M. Hawley, *Pro Se*, Conrad, Montana

Submitted on Briefs: October 28, 1999

Decided: January 6, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1This is an appeal by the Board of Oil and Gas Conservation, Department of Natural Resources and Conservation, (the "Board") from an order of the Ninth Judicial District Court, Pondera County, vacating the Board's September 4, 1997 administrative Order (hereafter Board Order No. 104-97) and October 1, 1997, Order to Terminate Production Operations in wells being operated by Respondents, Merrill S. Hawley and Carol Hawley, partners in Hawley Oil ("Hawley").

¶2The issue presented is whether the Board, absent an emergency, has authority to order that producing oil wells be shut-in. We reverse the decision of the District Court.

Background

¶3On May 14, 1997, the Board issued an order requiring Hawley to appear and show cause why its various companies' bonds should not be doubled and why other penalties should not be imposed as a result of Hawley having over eighty documented deficiencies since 1990 and being slow to correct deficiencies brought to its attention and to correct production methods to prevent future oil spills or pit problems. At the show cause hearing, Field Inspector Sasaki testified, noting evidence of oil leaking from tanks, flow lines, and pits at over twenty Hawley well locations. Hawley did not contest Mr. Sasaki's testimony in this regard.

¶4The Board then issued an order requiring Mr. Hawley to file a written report with the Board as to the condition of each well and each production facility. The order further stated that if the Board determined that no "SUBSTANTIAL progress in coming into compliance" had been made by September 3, 1997, all Hawley wells would be suspended until further notice.

¶5In Board Order No. 104-97, the Board determined that no substantial progress had been made and granted Hawley until October 1, 1997 to bring operations into compliance. The

order further stated that if Hawley was not in full compliance with the Board's rules and orders by October 1, 1997, the Board administrator would order that production be terminated at all Hawley facilities. By order dated October 1, 1997, the Board administrator found that all Hawley facilities were not in compliance, that progress towards compliance was minimal, and directed that production of oil from Hawley operations cease.

¶6Hawley then filed suit against the Board in District Court, seeking a temporary and permanent injunction enjoining the enforcement of the Board's October 1, 1997 Order to Terminate Production Operations. The District Court temporarily enjoined enforcement of the order and scheduled a show cause hearing. Following the show cause hearing, the District Court continued the temporary restraining order and ordered the filing of written memoranda. After considering the briefs, the District Court concluded that the actions of the Hawleys, as conceded by the Board, did not give rise to emergency action under § 82-11-151, MCA, which allows the administrator to order immediate closure or shutdown of any well which threatens imminent and substantial pollution. The District Court then reasoned that the balance of the statutory scheme pertaining to enforcement of Board orders

leads this Court to conclude the Board must seek judicial enforcement of its non-emergency orders. These statutes specifically authorize and direct the Board to seek judicial assistance in the form of injunctive relief, Section 82-11-147, and enforcement of monetary penalties, Section 82-11-149. This specific direction leaves nothing to be implied as to the scope of the Board's authority to enforce its non-emergency orders.

## Standard of Review

¶7The issue before the Court involves an interpretation of § 82-11-147, MCA. When we review a district court's conclusions of law, our standard of review is plenary and we must determine whether the court's conclusions are correct as a matter of law. *See* Lane v. Farmers Union Ins., 1999 MT 252, ¶ 15, 56 St.Rep. 990, ¶ 15, ___ P.2d ___, ¶ 15.

## Discussion

¶8Hawley contends that, in the absence of facts warranting emergency action under § 82-11-151, MCA, the Board has no statutory authority to order that production be terminated; that its sole remedy is to petition the District Court for an injunction pursuant to § 82-11-

147(1)(a), MCA.

¶9Section 82-11-124, MCA, provides that, for the purpose of preventing waste, the Board shall regulate the drilling, producing, and plugging of wells. Section 82-11-111(2), MCA, states that the Board shall require measures to be taken to prevent contamination of or damage to surrounding land or underground strata caused by drilling operations and production and adopt and enforce rules and orders to effectuate the purposes and the intent of this chapter.

¶10The Board interprets its powers as set forth in the above statutes to include the necessary and implicit authority to order that a well be shut-in if required to accomplish the Board's statutory charge. The Board cites our decision in Christenot v. State, Dep't of Commerce (1995), 272 Mont. 396, 401, 901 P.2d 545, 548, for the proposition that an administrative agency's interpretation of a statute under its domain is presumed to be controlling. In *Christenot*, we held "the construction of a statute by the agency responsible for its execution should be followed unless there are compelling indications that the construction is wrong." *Christenot*, 272 Mont. at 401, 901 P.2d at 548 (citation omitted).

¶11Although we do not disagree that the Board's authority to require a shut-in may be implicit in its authority to regulate the drilling and producing of wells under § 82-11-124, MCA, we base our decision upon the express provisions of § 82-11-147(1)(b), MCA:

**82-11-147. Violations.** **(1) Notwithstanding any other provisions of this chapter, if the board finds upon receipt of evidence:**

(a) that a person is violating or threatening to violate this chapter or a rule or order of the board, the board may bring suit against that person in the district court of any county where the violation occurs or is threatened to restrain the person from continuing the violation or from carrying out the threat of violation; or

(b) that a person is violating this chapter or a rule or order of the board in a manner for which the board is authorized to institute proceedings pursuant to 82-11-149, the board may issue an order either assessing a civil penalty in the amount prescribed in 82-11-149, up to a maximum administrative penalty of $125,000, or requiring compliance with this chapter or a rule or order, or both.

(2) In a suit under subsection (1)(a), the court may grant to the board, without bond or other undertaking, such prohibitory and mandatory injunctions as the facts may warrant,

including temporary restraining orders.

¶12Hawley's argument focuses entirely upon the provisions of § 82-11-147(1)(a), MCA, which gives the Board authority to initiate suit in district court to restrain a person from continuing a violation or from carrying out a threat of violation. Hawley's contention that this provision establishes the Board's exclusive remedy for non-emergency situations rings hollow in light of the provisions in subsection (b). Subsection (b) grants the Board authority to "issue an order either assessing a civil penalty in the amount prescribed in 82-11-149, up to a maximum administrative penalty of $125,000, or requiring compliance with this chapter or a rule *or order*, or both." Section 82-11-147(1)(b), MCA (emphasis added). If, as Hawley posits, the provisions of § 82-11-147(1)(a), MCA, were the exclusive remedy available to the Board, then the language of § 82-11-147(1)(b), MCA, authorizing an order requiring compliance with a "rule or order" would be rendered meaningless. Interpretations that give effect to the legislation are always preferred over interpretations that treat the statute as void or as mere surplusage. American Linen Supply v. Dep't of Revenue (1980), 189 Mont 542, 545, 617 P.2d 131, 133; § 1-3-232, MCA. Clearly, under subsection (b), the Board has express authority to issue an order requiring compliance with a prior order of the Board. In the present case, that means that the Board had authority on October 1, 1997, to require compliance with its prior order of September 4, 1997 by ordering termination of production.

¶13Hawley's contention that § 82-11-147(1)(a), MCA's injunctive remedy is exclusive is also belied by the provisions of § 82-11-149, MCA, which state that a person guilty of violating Board orders is subject to a civil penalty of $75 - $10,000 a day and that "[a]ction under this section does not bar enforcement of this chapter or of rules or orders issued under it by injunction *or other appropriate remedy*." Section 82-11-149(2), MCA (emphasis added). We conclude that injunction through judicial enforcement is not the exclusive remedy available to the Board in non-emergency situations and that the District Court erred in vacating Board Order No. 104-97 and the October 1, 1997 order terminating production in Hawley wells.

¶14Reversed and remanded for reinstatement of Board Order No. 104-97 and the Order to Terminate Production Operations, dated October 1, 1997.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY