No. 01-500

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 171

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

CHRISTOPHER JAMES RAY,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and for the County of Ravalli, Cause No. DC 99-27,
The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Kristina Guest, Appellate Defender Office, Helena, Montana

    For Respondent:

    Mike McGrath, Montana Attorney General, Jim Wheelis, Assistant Montana Attorney General, Helena, Montana; George H. Corn, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs:  March 27, 2003

Decided:   June 23, 2003

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Defendant Christopher Ray (Ray) was convicted in the Twenty-First Judicial District Court, Ravalli County, of one count of burglary and two counts of aggravated burglary. Ray appeals his convictions, alleging his right to a speedy trial was violated and that he was entitled to a directed verdict on the aggravated burglary counts. We affirm in part and reverse in part and remand for proceedings consistent with this Opinion.

¶2     We address the following issues on appeal:

¶3     1. Was Ray denied his constitutional right to a speedy trial in the District Court?

¶4     2. Under § 45-6-204(2)(a), MCA, does the theft of a loaded gun qualify as "armed with a weapon" for purposes of elevating a burglary charge to aggravated burglary?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶5     On February 4, 1999, two residents of Ravalli County reported that their respective houses had been burglarized. Items reported missing included one loaded firearm, several unloaded firearms, electronic equipment, coins, a camera, and various other items. The following week, two more burglaries were reported in the area. These two burglaries were of summer vacation homes, and the owners and police officers could not determine the exact date of the burglary. Items stolen from the vacation homes included, more firearms, a Ford Bronco, electronic equipment, tools, household items, and alcohol.

¶6     On February 9, 1999, the stolen Ford Bronco was found in Madison, Ohio. The Bronco contained possessions and firearms belonging to the owner of one of the houses that was reported burglarized on February 4, 1999. The police also found Ray's fingerprints

2

inside the Bronco. An Oldsmobile Cutlass had been stolen in the area where the abandoned Bronco was found.

¶7 Four days later, on February 13, 1999, the stolen Oldsmobile Cutlass was found in Yonkers, New York. It contained firearms belonging to the owner of the other house that was burglarized on February 4, 1999. Another car, this time a Honda, had been stolen in the vicinity of where the Oldsmobile was found.

¶8 Finally, on February 13, 1999, Ray was discovered asleep in the stolen Honda in Polk County, Arkansas. After Ray was arrested, he told the officer about stealing guns and cars out of fear of the Mafia trying to kill him.

¶9 Ray was subsequently extradited to Montana and charged with three counts of burglary. The charges were later amended to add another count of burglary and then to change three of the counts to aggravated burglary. After lengthy delays but before trial, Ray moved for dismissal of the charges on the grounds that his speedy trial rights were violated. The District Court denied his motion, concluding that Ray was not prejudiced by the various delays. The charges were then tried before a jury. At conclusion of the State's evidence, Ray moved for a directed verdict on the aggravated burglary counts, asserting that the stolen firearms themselves did not qualify him as "armed" under aggravated burglary. The District Court denied the motion concluding that carrying or being in possession of any weapon was sufficient to meet the aggravated burglary statute.

¶10 After trial, the jury convicted Ray of one count of burglary and two counts of aggravated burglary and acquitted Ray on the other count of aggravated burglary. Ray

3

appeals, alleging his speedy trial rights were violated and that the District Court should have granted his motion for a directed verdict regarding the aggravated burglary counts. Further facts and the procedural background regarding the speedy trial issue are discussed below.

## II. DISCUSSION

¶11 **1. Was Ray denied his constitutional right to a speedy trial in the District Court?**

**A. Standard of Review**

¶12 Whether a defendant has been denied a speedy trial constitutes a question of constitutional law. *State v. Small* (1996), 279 Mont. 113, 116, 926 P.2d 1376, 1378; *see also State v. Bullock* (1995), 272 Mont. 361, 368, 901 P.2d 61, 66. We review a district court's conclusions of law to determine whether its interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

¶13 We review claims that a speedy trial was denied in violation of the Sixth Amendment to the United States Constitution, and Article II, Section 24, of the Montana Constitution, based on the general guidelines established by the United States Supreme Court in *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. Under *Barker*, we must consider: (1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right to a speedy trial by the defendant; and (4) the prejudice to the defense. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

¶14 Using the general guidelines established in *Barker*, this Court set forth Montana's procedure for addressing speedy trial claims in *City of Billings v. Bruce*, 1998 MT 186, 290 Mont. 148, 965 P.2d 866. As for the first *Barker* factor, length of the delay, in *Bruce*, we

4

established 200 days as the necessary length of time to trigger further speedy trial analysis. *Bruce*, ¶ 55.

¶15     The second *Barker* factor, the reason for the delay, requires us to attribute delay to either the State or the defendant on a case-by-case basis.  *Bruce*, ¶ 56.

¶16     Concerning the third *Barker* factor, whether the defendant's right to speedy trial has been timely asserted, we determined that if the right to speedy trial is invoked at any time prior to the commencement of trial, either by demanding a speedy trial, or by moving to dismiss for failure to provide a speedy trial, the third factor has been satisfied.  *Bruce*, ¶ 57.

¶17     Finally, we determined that the fourth *Barker* factor, prejudice the delay caused to the defense, can be established based on any of the following factors: (1) pretrial incarceration; (2) anxiety and concern to the defendant; and (3) impairment of the defense.  *Bruce*, ¶ 58. Regarding these factors, the Supreme Court stated:

> Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.  If witnesses die or disappear during a delay, the prejudice is obvious.  There is also prejudice if defense witnesses are unable to recall accurately events of the distant past.  Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Bruce*, ¶ 19 (quoting *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118).

## B. Discussion

¶18     In the instant case, Ray was arrested in Arkansas on February 13, 1999.  Over a month later, on March 23, 1999, the State filed a motion for leave to file an information.

Ray appeared in District Court for the first time on March 24, 1999, to enter a not guilty plea.

¶19 On April 7, 1999, Ray appeared at an omnibus hearing and moved for a change of counsel. On April 21, 1999, Ray requested a competency evaluation. Based on results of the evaluation, the court determined Ray was fit to proceed at a status hearing on his case on July 14, 1999. As a result, an original trial date was set for November 8, 1999. On October 29, 1999, however, Ray and the prosecution supposedly reached a plea agreement. The supposed plea agreement was never signed and neither the prosecution nor Ray filed a motion to vacate the November 8, 1999 trial date. Consequently, the November 8, 1999 trial date passed.

¶20 Ray requested a second mental competency evaluation on November 24, 1999. On March 22, 2000, after a competency report was completed, the court found Ray competent to proceed. Rather than setting a new trial date, the court ordered another settlement conference. On April 28, 2000, a trial date of September 25, 2000, was finally set. Ray was convicted by a jury of one count of burglary and two counts of aggravated burglary.

¶21 As stated above, the first inquiry we must make under *Barker* and *Bruce* pertains to the length of the delay before Ray's trial. Whether the length of delay before Ray's trial is sufficient to trigger a speedy trial analysis is a threshold question. *Bruce*, ¶ 55. Assignment of blame to either the State or Ray is irrelevant for purposes of this inquiry. *Bruce*, ¶ 55. We established 200 days as the minimum length of time required to trigger further speedy trial analysis. *Bruce*, ¶ 55.

6

¶22   The State contends that for purposes of this speedy trial analysis, the clock should start running from March 24, 1999, the date the court granted the State's motion for leave to file an information.  The State cites *Bruce* in support of this contention.  In *Bruce* we wrote, "We will first consider the length of delay from the time charges are filed (or as in this case, the date on which the notice of appeal from the city court is filed) until the defendant's trial date for the purpose of determining whether there is a basis for conducting a speedy trial analysis." *Bruce, ¶ 55*. The facts of *Bruce*, however, are distinguishable from the facts here.  Bruce was convicted in city court and appealed the verdict to the district court.  Bruce alleged his speedy trial right was violated regarding his appeal, not his trial in city court; thus, we used the date on which Bruce filed his notice of appeal from the city court as the starting point for calculating delay.

¶23   The rule regarding when we begin calculating delay in a speedy trial analysis is stated more clearly in *State v. Wombolt* (1988), 231 Mont. 400, 402, 753 P.2d 330, 331: "[T]he right to speedy trial attaches at arrest or the filing of the complaint in justice court." *See also State v. Larson* (1981), 191 Mont. 257, 623 P.2d 954.  In the instant case, 590 days elapsed from the date Ray was arrested, February 13, 1999, until the start of his trial, September 25, 2000, clearly exceeding the 200-day requirement.

¶24   Under the second prong of *Barker* and *Bruce*, we must next consider the reason for the delay, and attribute the delay to either the State or Ray.  "[T]he court determines which party is responsible for specific periods of time, then respectively allocates the total time delay between the parties." *State v. Hardaway*, 1998 MT 224, ¶ 15, 290 Mont. 516, ¶ 15,

966 P.2d 125, ¶ 15. As we already stated, 200 days is the necessary length of time to trigger further speedy trial analysis. When it has been demonstrated that 275 days of delay is attributable to the State, the burden shifts to the State to demonstrate that the defendant has not been prejudiced by the delay. *Bruce*, ¶ 56.

¶25 The State and Ray generally agree on how many days of delay were attributable to Ray as opposed to the State. As we explained above, we are required to start counting days of delay on the day Ray was arrested, February 13, 1999. The 53-day delay from Ray's arrest on February 13, 1999, to the omnibus hearing on April 7, 1999, is attributable to the State. At the April 7, 1999 omnibus hearing, Ray requested a change of counsel and at the April 21, 1999 hearing he requested a competency evaluation, both of which the District Court granted. As stated above, Ray was subsequently found competent at a status hearing on July 14, 1999. The 98-day delay between the April 7, 1999 omnibus hearing and the July 14, 1999 status hearing is chargeable to Ray. The 133 days between the July 14, 1999 status hearing and the November 24, 1999 hearing at which Ray requested another competency exam is attributable to the State.

¶26 Then, 119 days passed from the time Ray requested the second competency examination until Ray was determined competent on March 22, 2000, all of which are attributable to Ray. Even though Ray was determined competent on March 22, 2000, the District Court did not set a trial date until April 28, 2000. On April 28, 2000, the District Court finally set the trial date for September 25, 2000, making 187 days attributable to the State. Ray's trial began as scheduled on September 25, 2000.

8

¶27 In all, Ray is responsible for 217 days of delay, while the State is responsible for 373 days, well beyond the 275-day mark at which the burden to show lack of prejudice to the defendant shifts to the State. On appeal the State concedes that 334 days of the delay should be attributed to the State. Importantly, the District Court attributed less than 275 days of the delay to the State.

¶28 Under the third prong of *Barker* and *Bruce*, we must next consider whether Ray's right to a speedy trial was timely asserted. If the right to speedy trial is invoked at any time prior to the commencement of trial, either by demanding a speedy trial, or by moving to dismiss for failure to provide a speedy trial, the third prong of the *Barker* test is satisfied. *Bruce*, ¶ 57.

¶29 Ray asserted his right to a speedy trial on numerous occasions. He wrote letters to the District Court complaining about the delays in his case. Ray's letters were received by the court on January 24, 2000, February 2, 2000, February 25, 2000, and March 8, 2000. In his January 24, 2000 letter, Ray wrote to the District Court:

> I have been waiting in Ravalli County jail since March 5[th] for trial. I am told it has been scheduled and post poned [sic]. I would like to go to trial at the earliest date possible. I feel my speedy trial rights may have been overlooked.

On September 11, 2000, Ray's counsel filed a motion invoking his right to a speedy trial. Moreover, the State concedes that Ray timely invoked his right to a speedy trial. Thus, we conclude that Ray has satisfied the third prong of the *Barker* and *Bruce* test.

¶30 Finally, we must analyze the fourth prong of the *Barker* and *Bruce* test, whether the defendant was prejudiced by the delay. In doing so, we should take into consideration, but

9

need not include, three bases for prejudice: (a) pretrial incarceration, (b) anxiety and all of the practical applications that have been articulated by the United States Supreme Court, and (c) impairment to the defense. *Bruce*, ¶ 58.

¶31 As we have already stated, if 275 days of delay are attributable to the State rather than the defendant, then the burden shifts to the State to demonstrate that the defendant has not been prejudiced by the delay. We have already concluded, and both parties agree, that more than 275 days of delay before Ray's trial are attributable to the State; therefore, the State has the burden of showing that Ray was *not* prejudiced by the delay. In the District Court, the State argued that Ray had the burden of showing prejudice by the delay since less than 275 days were attributed to the State. The District Court agreed and placed the burden on Ray. As previously mentioned, the State concedes on appeal that this was error.

¶32 In its order denying Ray's motion to dismiss for lack of speedy trial, the District Court states that it would reach the same conclusion even if the burden of showing lack of prejudice was with the State. Unfortunately, we are unable to conduct a meaningful review of the evidence when the burden of proof was erroneously applied by the trial court. Therefore, we remand this matter to the District Court so that it can revisit its speedy trial analysis after properly acknowledging that the State has the burden of establishing lack of prejudice to Ray occasioned by the delay.

¶33 **2. Under § 45-6-204(2)(a), MCA, does the theft of a loaded gun qualify as "armed with a weapon" for purposes of elevating a burglary charge to aggravated burglary?**

**A. Standard of Review**

10

¶34    This Court reviews denial of a motion for a directed verdict of acquittal to determine whether the district court abused its discretion. *State v. Giant*, 2001 MT 245, ¶ 9, 307 Mont. 74, ¶ 9, 37 P.3d 49, ¶ 9. A directed verdict is appropriate when there is no evidence upon which a jury could base a guilty verdict. No abuse of discretion occurs if, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Giant*, ¶ 9. However, if the denial of directed verdict is based on a conclusion of law, like our review of any conclusion of law by a district court, we review the conclusion of law *de novo* to determine whether it is correct. *Giant*, ¶ 9.

¶35    In this case, the District Court's denial of Ray's motion for directed verdict rested on the District Court's interpretation of the definition of "armed with . . . a weapon" under § 45-6-204(2)(a), MCA. As this involves interpretation of a statute, our review in this case is *de novo*. *State v. Peplow*, 2001 MT 253, ¶ 17, 307 Mont. 172, ¶ 17, 36 P.3d 922, ¶ 17 (interpretation of a statute is a matter of law). Further, we note that this is an issue of first impression in Montana. Accordingly, we look to other states for guidance.

**B. Discussion**

¶36    We begin by setting out the provision in issue here. Section 45-6-204(2)(a), MCA, sets out the elements of aggravated burglary and states in relevant part:

> A person commits the offense of aggravated burglary if he knowingly enters or remains unlawfully in an occupied structure with the purpose to commit an offense therein and: (a) in effecting entry or in the course of committing the offense or in immediate flight thereafter, he or another participant in the offense *is armed with explosives or a weapon*. [Emphasis added.]

11

As is apparent from the statute, one of the elements the State must prove in a case of aggravated burglary is that the defendant was "armed with . . . a weapon."

¶37 Ray asserts the District Court erred when it denied his motion for a directed verdict because he argues that the mere theft of a weapon during a burglary does not qualify as "armed with . . . a weapon." Citing *State v. Befford* (Ariz. 1986), 715 P.2d 761, in his support, Ray asserts that he was not "armed" since he simply possessed the firearms as stolen property and did not intend to use them. As a result, Ray claims the State's evidence failed to prove the element that he was armed with a weapon because the State did not prove he had intent to use a weapon during the burglary.

¶38 In contrast, the State argues the element "armed with . . . a weapon" is satisfied by possession of a weapon, rather than a showing of intent. Further, the State asserts Ray was armed because he stole firearms in the course of the burglaries. In support of its argument, the State cites *State v. Merritt* (N.J. Super. Ct. App. Div. 1991), 589 A.2d 648. The District Court agreed with the State and held that simple possession of a weapon by virtue of the burglary qualified as armed with a weapon.

¶39 As mentioned above, this case presents an issue of first impression to this Court. After reviewing the statutory language and case law from other jurisdictions, we agree with the State subject to a proviso which we discuss in detail below.

¶40 First, in interpreting § 45-6-204(2)(a), MCA, we must give effect to the plain language "armed with . . . a weapon." The term "weapon" is statutorily defined by § 45-2-101(78), MCA, as follows:

> Unless otherwise specified in the statute, all words will be taken in the objective standard rather than in the subjective, and unless a different meaning plainly is required, the following definitions apply in this title . . . (78) "Weapon" means an instrument, article, or substance that, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury.

As our previous case law interpreting this section holds and as the plain language of this section indicates, a weapon can be virtually any instrument. *State v. Mummey* (1994), 264 Mont. 272, 277-78, 871 P.2d 868, 871-72 (holding tennis shoe may be a weapon). Yet, if this Court were to hold that "armed with . . . a weapon" means any instrument in possession of a burglar, every burglary charge would automatically be elevated to aggravated burglary. Besides eliminating the crime of burglary, such an interpretation would make the term "armed" synonymous with the term "weapon." Neither result is tenable under the rules of statutory interpretation, as we normally construe provisions to give effect to all the language. *Hawley v. Board of Oil & Gas Conservation*, 2000 MT 2, ¶ 12, 297 Mont. 467, ¶ 12, 993 P.2d 677, ¶ 12. Therefore, we must address the definition of the term "armed," as it is not specifically defined by statute.

¶41 At this point, it is instructive to look to case law from other jurisdictions. Our review of the cases regarding the definition of the term "armed" indicates there is near uniform agreement among the states that the term "armed" means readily accessible and available for use. *Merritt*, 589 A.2d at 650; *Wesolic v. State* (Alaska Ct. App. 1992), 837 P.2d 130, 133-34; *State v. McCaskill* (S.C. Ct. App. 1996), 468 S.E.2d 81, 82. However, again, combining this definition with Montana's definition of weapon gives the phrase "armed with . . . a

weapon" an overly broad meaning because it means the defendant has any instrument readily accessible and available for use as a weapon. Therefore, we again look to other states to see whether the element of armed with a weapon requires mere possession or, instead, requires an intent to use burglary spoils as weapons in furtherance of the crime.

¶42    Our review of the case law indicates that whether a state allows possession of stolen property to qualify a defendant as armed with a weapon depends on two factors: the nature of the weapon stolen and the statutory definitions of both burglary and weapon. First, regarding the nature of the weapon stolen, the case law is generally divided into cases that address firearms versus cases that address other types of weapons. Further, cases involving firearms make up the majority of jurisprudence on this subject. In this case, the underlying weapons used to elevate the charges against Ray to aggravated burglary included various firearms taken from the residences. Therefore, for our purposes here, we look to other case law involving firearms. In pointing out this distinction in the case law, we note that our holding here is accordingly limited to theft of firearms. We will address other types of weapons that may be stolen during a burglary on a case by case basis.

¶43    Regarding the second factor, statutory definitions, the majority of jurisdictions interpret their respective statutes to follow the common sense rule that a person who steals a firearm may be found to have been armed with a weapon, without showing that he actually intended to use the firearm, so long as the weapon was readily accessible and available for use. *Merritt*, 589 A.2d at 650. As the *Merritt* court observed:

14

> [I]t is evident that a person may become armed with a weapon obtained in a burglary or other offense. Once obtained during the course of the offense, a weapon may be as readily accessible to the perpetrator as if he had brought it to the scene initially, and the State is only required to show such access to establish that the defendant was armed.

*Merritt*, 589 A.2d at 650. However, whether or not a firearm is readily accessible and available for use varies significantly depending on a given state's statutory scheme and definitions.

¶44    For example, in *State v. Crews* (Mo. Ct. App. 1998), 968 S.W.2d 763, 765, the Missouri court allowed theft of a gun, whether loaded or unloaded, to qualify a burglar as armed with a deadly weapon because that state's legislature defined a "deadly weapon" as any firearm, loaded or unloaded. Consequently, by statutorily defining weapons to specifically address firearms, an unloaded gun is considered readily available and accessible for use in Missouri when taken by a burglar. *See also State v. Hall* (Wash. App. 1987), 732 P.2d 524, 527; *State v. Faille* (Wash. App. 1988), 766 P.2d 478, 479; *State v. Luna* (N.M. Ct. App. 1982), 653 P.2d 1222, 1222; *People v. Loomis* (Colo. Ct. App. 1992), 857 P.2d 478, 480.

¶45    In contrast, in *People v. Griffin* (N.Y. County Ct. 1999)*,* 695 N.Y.S.2d 868, 870, the New York court noted that the definition of deadly weapon in that state requires a firearm to be loaded. Therefore, theft of an unloaded firearm in the course of a burglary does not elevate the crime in that state because an unloaded firearm is not considered readily accessible and available for use. Further, the court noted that the prosecution has to prove

the stolen firearm was loaded as an element of first degree burglary. *Griffin*, 695 N.Y.S.2d at 870.

¶46    In addition to differences in the definition of weapon, differences in the definition of burglary also affect judicial interpretation. For example, Alaska allows mere possession of a loaded firearm stolen during a burglary to increase a criminal's potential liability because the statute in that state specifically requires the prosecution to prove intent only if the stolen item is not a firearm. *Wesolic*, 837 P.2d at 133-34. However, the opinion in *Wesolic* notes that the firearm in that case was loaded and the court left open the question of whether an unloaded firearm would qualify one as "armed" under the statute. *Wesolic*, 837 P.2d at 134, n.1.

¶47    In *Befford*, 715 P.2d at 763, cited by Ray, the Arizona court interpreted a burglary and dangerous instrument statute similar to Montana's under facts somewhat similar to the instant case. In *Befford*, the defendant stole an unloaded firearm still in its case and asserted that he was unarmed because he took the firearm as loot and did not have intent to use the weapon. Ruling in favor of the defendant, the court noted that Arizona's broad definition of dangerous instrument could include anything from a lamp to a set of tools and stated, "the result would be to classify most every burglary as first degree." *Befford*, 715 P.2d at 763. Consequently, the court held, "In order to be 'armed' within our burglary statute, a defendant must possess the item considered a . . . dangerous instrument in such a manner as to indicate his willingness or present ability to use it as a 'weapon.'" *Befford*, 715 P.2d at 763. Apparently, because the gun was not loaded and no intent was proven, the court did not find

it necessary to distinguish between its use of "willingness," indicating an intent to use a weapon, and "present ability to use," indicating mere possession of weapon.

¶48     In contrast to *Befford*, the Arizona court has also held in *State v. Romero* (Ariz. Ct. App. 1982), 659 P.2d 655, that theft of a loaded gun stolen during a burglary qualifies as armed with a weapon under the same statutory scheme. However, in that case, the defendant attempted to use the gun, so he demonstrated an intent as well as mere possession. Further, after *Befford*, the Arizona legislature amended the burglary statute to specifically allow mere possession of an unloaded firearm to qualify for the elevated burglary charge by changing the statutory language from "armed" to "knowingly possess." *State v. Tabor* (Ariz. Ct. App. 1995), 907 P.2d 505, 506.

¶49     From these cases it is apparent that although statutory definitions vary, there is general agreement that when a burglar steals a loaded firearm as proceeds, mere possession of the firearm qualifies the defendant as armed with a weapon because the weapon is readily accessible and available for use. Simply put, a burglar in possession of a loaded gun stolen as part of the "loot" is just as dangerous as a burglar in possession of a gun he brought to the burglary. In either case the armed burglar may well injure or kill upon being surprised by the premises owner or the police, at or while in the flight from the scene of the crime.

¶50     In contrast, the cases also indicate that there is disagreement regarding whether theft of an unloaded firearm makes the defendant armed. However, our review of the case law indicates that in states that allow an unloaded firearm to qualify a defendant as armed with

17

a weapon, the statutory definitions are generally designed to specifically include an unloaded firearm as a deadly weapon.

¶51 While we agree with the policy that greater criminal liability should attach to the theft of firearms whether loaded or unloaded, we are bound here to interpret when a defendant legally qualifies as "armed with . . . a weapon" such that the defendant has a firearm readily accessible and available for use. Because Montana's statutory scheme does not specifically define weapons so as to single out either firearms or deadly weapons, we cannot agree that a defendant who steals an unloaded firearm has a weapon readily accessible and available for use under the plain language of the statute. Any policy to provide greater punishment for the theft of unloaded firearms during the course of a burglary, or to provide greater punishment for the theft of any other specific types of weapons for that matter, must come from the Legislature.

¶52 Accordingly, we hold that when the State seeks to prove a defendant was "armed with . . . a weapon" under § 45-6-204(2)(a), MCA, the State meets this burden when it proves the defendant stole a loaded weapon during the course of a burglary. Further, the State does not meet this burden when it proves the defendant stole unloaded firearms, unless the State is also able to prove the defendant had an intent to use the unloaded firearms as a weapon. We note in making this holding that if the defendant loads a previously unloaded firearm stolen during the course of a burglary, the defendant obviously qualifies as armed with a weapon under § 45-6-204(2)(a), MCA.

18

¶53 We also note that this interpretation of § 45-6-204(2)(a), MCA, gives proper meaning to the term "armed" in other Montana statutes that imply an immediate and present ability to use a weapon. *See*, *e.g.*, § 46-5-402, MCA (stop and frisk allowed when officer has "reasonable cause to suspect that the person is *armed* and presently dangerous"); § 37-60-101(2)-(4), MCA (*Armed* private security guard means an individual who, in addition to other requirements, wears or carries a firearm in the performance of the individual's duties). This holding also fits with our prior use of the term "armed" in Montana case law. *See*, *e.g.*, *State v. Ahmed* (1996), 278 Mont. 200, 205, 924 P.2d 679, 682 (victim testified defendant was armed with a gun); *Kills On Top v. State* (1995), 273 Mont. 32, 57, 901 P.2d 1368, 1384 (armed officers in the courtroom was not prejudicial to defendant); *In re Shennum* (1984), 210 Mont. 442, 684 P.2d 1073 (defendant was armed when he entered city council chambers with a loaded gun).

¶54 In sum, we hold that stealing loaded firearms in the course of committing an otherwise unarmed burglary elevates a burglary to an aggravated burglary by virtue of mere possession of the firearms. The burglar, whether he is so armed when he commences the burglary or becomes so armed during the course of the burglary, nevertheless possesses a weapon which is readily accessible in furtherance of the crime.

## C. Ray's Convictions for Aggravated Burglary

¶55 Having determined that mere possession of a loaded firearm stolen during a burglary qualifies as armed with a weapon for purposes of aggravated burglary, while a showing of intent is required when a defendant steals an unloaded firearm, we now turn to apply this rule

19

to Ray's case. As mentioned above, we review denial of a motion for a directed verdict of acquittal to determine whether the district court abused its discretion. No abuse of discretion occurs if, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

¶56 At trial, the State presented evidence that Ray stole over a dozen hunting rifles and shotguns and several pistols from two of the residences, hence the two convictions for aggravated burglary. However, the State's evidence only showed one of those weapons to be loaded. Therefore, we consider the two counts of aggravated burglary separately.

¶57 Regarding the count based in part on the loaded pistol from the McCarty residence, the State proved the firearm was loaded based on the testimony of the owner who stated that he knew the pistol was loaded when it disappeared from his residence. The State notes that testimony from only one witness is sufficient to prove a fact. *State v. Merrick*, 2000 MT 124, ¶ 13, 299 Mont. 472, ¶ 13, 2 P.3d 242, ¶ 13. Having reviewed the testimony, we hold that the State met its burden to prove Ray was in possession of a loaded firearm during the course of one of the burglaries. Therefore, regarding this conviction for aggravated burglary, the District Court did not abuse its discretion in denying Ray's motion for a directed verdict.

¶58 Regarding the other conviction for aggravated burglary, the State failed to prove that any of the other firearms were loaded. Therefore, the District Court abused its discretion when it denied Ray's motion for a directed verdict. At this point, Ray asserts the entire conviction must be reversed. Alternatively, the State argues that Ray's conviction should

20

be reduced from aggravated burglary to burglary. We agree with the State. On appeal, this Court may reduce the offense for which an appellant was convicted to a lesser included offense. *State v. Stevens*, 2002 MT 181, ¶ 54, 311 Mont. 52, ¶ 54, 53 P.3d 356, ¶ 54; § 46-20-703(3), MCA. As the State met all the other elements for burglary in this case, we hold that Ray's conviction for aggravated burglary is hereby reduced to burglary and we remand to the District Court for resentencing on this conviction.

### III. CONCLUSION

¶59 Because mere possession of a loaded firearm in the course of a burglary qualifies Ray as armed with a weapon, one of Ray's convictions for aggravated burglary will stand. The other conviction is reduced to burglary. Further, the District Court is directed to conduct a speedy trial analysis consistent with *Bruce* and this Opinion.

¶60 Affirmed in part and reversed in part and remanded for proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ JIM RICE