No. 03-139

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 332

LILLIAN THOMPSON WOODS,
Independent Administratix of the Estate
of ANDRE G. WOODS, Deceased,

Petitioner and Appellant,

v.

THE BURLINGTON NORTHERN and
SANTA FE RAILWAY,

Defendant and Respondent.

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark, Cause No. ADV 2001-343
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Alexander Blewett III, Hoyt & Blewett, Great Falls, Montana

For Respondent:

Randy J. Cox, Boone Karlberg, Missoula, Montana

Submitted on Briefs:  June 26, 2003

Decided:  November 23, 2004

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Lillian Woods (Lillian), the widow of Andre "Pete" Woods (Woods), appeals the District Court's determination that Burlington Northern Santa Fe Railroad (BNSF or the Railroad) was not negligent *per se* when one of its employees, Gordon Holloway (Holloway), failed to comply with the terms of a track warrant. The resulting collision caused Woods' death. We reverse and remand.

## ISSUES

¶2 A restatement of the issues before this Court is:

¶3 Did the District Court err in finding that BNSF was not negligent *per se?*

¶4 Did the District Court err in allowing the jury to consider whether Woods was contributorily negligent?

¶5 Did the District Court err in allowing BNSF employees to testify regarding BNSF's safety rules?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 The facts pertinent to the issues in this case are undisputed and uncontested. On August 23, 2000, Woods, a welding supervisor employed by BNSF, accompanied Holloway, a track supervisor for BNSF, in a hy-rail vehicle to inspect a specific section of track. Prior to departing from their point of origin, Holloway, in accordance with federal regulations and

2

company rules, obtained a "track warrant" (warrant), which gave Holloway's vehicle exclusive use of the segment of track described in the warrant. The segment of track described in track warrants always has a clearly identifiable starting and ending point, and is known as the "working limits" of the warrant. Under the warrant, until Holloway notified the railroad dispatcher that he no longer required exclusive use of that segment of track, the dispatcher would not allow any other trains or railway vehicles coming from the opposite direction to be within the working limits assigned to Holloway.

¶7     Once Holloway reached the point of destination described in his track warrant, he was not authorized to proceed further down the track until he obtained a new track warrant defining new working limits. Holloway, nonetheless, proceeded more than four miles beyond the destination point of his working limit, at which time he encountered an oncoming train. The train struck the hy-rail vehicle. Holloway was able to jump clear but because Woods was constrained by a seat belt, he was unable to do so and was killed.

¶8     After the accident, BNSF conducted an investigation which determined that Holloway had violated the working limits of his exclusive track warrant authority by proceeding beyond the destination point identified in the warrant. The Railroad concluded that Holloway's error had caused Woods' death.

¶9     In June 2001, Lillian sued BNSF under the Federal Employers Liability Act (FELA). In September 2002, Lillian moved for partial summary judgment seeking an order that BNSF was negligent *per se* for violating the railroad safety rules promulgated by the Federal Railroad Administration (FRA). BNSF argued that the federal rules do not prohibit a hy-rail

3

vehicle from exceeding the limits defined in a track warrant; therefore, Holloway had not violated federal safety rules, and BNSF was not negligent *per se.* Moreover, BNSF claimed that Woods was contributorily negligent because he did not stop Holloway from exceeding the working limits. After a hearing on November 13, 2002, the District Court concluded that BNSF was not negligent *per se* and denied Lillian's Motion.

¶10 On November 21, 2002, just one day after receiving a copy of the District Court's Order denying her Motion for Partial Summary Judgment on negligence *per se*, Lillian filed a "New Motion for Summary Judgment" seeking a ruling that Woods was not contributorily negligent because he was, in no way, in control of the hy-rail vehicle. The District Court denied the Motion as untimely explaining that the Scheduling Order required that all pre-trial motions be filed by November 15.

¶11 A jury trial was held from January 6-9, 2003. At the close of the trial, the jury reached a special verdict awarding Lillian $969,796.78. The jury also found that Woods was 50% negligent. As a result, the District Court entered a judgment in favor of Lillian for $484,898.39. Lillian appeals.

**STANDARD OF REVIEW**

¶12 The District Court's determination that BNSF was not negligent *per se* is a conclusion of law. We conduct a *de novo* review of a court's conclusion of law to determine whether its interpretation of the law is correct. *Reidelbach v. Burlington Northern Ry. Co.*, 2002 MT 289, ¶ 14, 312 Mont. 498, ¶ 14, 60 P.3d 418, ¶ 14 (citation omitted). *See also State v. Ray*, 2003 MT 171, ¶ 35, 316 Mont. 354, ¶ 35, 71 P.3d 1247, ¶ 35 (citation omitted).

4

¶13 The dispositive issue in this case is whether the District Court erred in ruling, as a matter of law, that BNSF was not negligent *per se.*

¶14 Negligence *per se* is simply negligence that is established as a matter of law, so that breach of the duty is not a jury question. It usually arises from a statutory violation. Black's Law Dictionary, Seventh Edition. It is well established, however, that under the FELA, the violation of a safety *regulation* also constitutes negligence *per se. Bevacqua v. Union Pacific Co.*, 1998 MT 120, 289 Mont. 36, 960 P.2d 273. *See also Walden v. Illinois Central Gulf R.R.* (7th Cir. 1992), 975 F.2d 361, 364. Accord *Kernan v. American Dredging Co.* (1958), 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (holding that recovery was permissible, without any showing of negligence, for death resulting from the violation of a *rule* concerning lighting equipment (emphasis added)); *Pratico v. Portland Terminal Co.* (1st Cir. 1985), 783 F.2d 255 (wherein the court determined that a jury instruction requiring the jury to find the defendant negligent as a matter of law if the defendant violated an OSHA *regulation* and such violation was a proximate cause of plaintiff's injury, was correct as a matter of law (emphasis added)). *Bevacqua,* ¶ 79.

¶15 In *Bevacqua*, Bevacqua's knee was injured in three different work-related incidents over an almost twenty-year period. After the last incident, he filed a FELA claim against Union Pacific alleging that the railroad was liable, under the theory of negligence *per se*, for his injuries. Union Pacific argued it could not be negligent as a matter of law because it had not violated a statute, but rather a locomotive noise-emission regulation, and that the injury

5

Bevacqua sustained was not the type of injury that was foreseeable under the breached law. Citing *Walden* and *Kernan*, we held that violation of a federal regulation is negligence *per se* under the FELA, and as such it is not necessary to establish the element of foreseeability. *Bevacqua*, ¶ 86. The Court, therefore, reinstated the original award of $320,000. *See also Rogers v. Missouri Pacific R. Co.* (1957), 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (In a FELA action, the railroad will be held liable if the employer's "negligence played any part, even the slightest, in producing the injury").

¶16 The FELA has been protecting railroad workers for almost one hundred years. Since its final enactment in 1910, courts have broadly interpreted it in an effort to honor the Congressional intent of the Act, which was "to protect railroad workers and to provide assured compensation for those workers injured by the negligence of their railroad employer." *Reidelbach*, ¶ 20. The liability section of the FELA states that "every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ." *Reidelbach*, ¶ 19 (citation omitted).

¶17 Under the Federal Railroad Safety Act of 1970, 45 U.S.C. § 421 *et seq*., the Secretary of Transportation promulgated the Federal Railroad Administration (FRA) regulations, which are published at 49 C.F.R., Subpart B, Chapter II, parts 200-50. Part 214 is dedicated to Railroad Workplace Safety.

6

¶18    Lillian argues that Holloway's violation of the terms of his track warrant constitute a violation of multiple regulations within Part 214. She maintains that had Holloway stopped the maintenance vehicle at the location required in his track warrant, the maintenance vehicle would not have been in the path of an oncoming train. Lillian asserts that BNSF's regulatory violation was the exclusive cause of her husband's death.

¶19    BNSF acknowledges that Holloway proceeded to travel past the warrant limits without proper authority. The Railroad argues, however, that this was not a violation of federal safety regulations but rather a violation of internal BNSF rules and as such does not constitute negligence *per se*. BNSF maintains that the federal "working limits" regulation that Lillian alleges it violated merely defines the extent of working limits. In other words, it argues, the regulation defines the limits by describing the clearly identifiable physical features constituting the points of origin and destination, but does not--by specific language-- prohibit exceeding them.

¶20    Before discussing the relevant regulations, it is important to note that "the United States Supreme Court has repeatedly held that FELA is to be given a liberal construction in favor of injured railroad workers so that it may accomplish the humanitarian and remedial purposes intended by Congress. This Court has followed federal case law in giving a liberal construction to FELA in favor of injured railroad workers." *Bevacqua*, ¶ 49 (internal citations omitted).

¶21    The purpose and scope of the FRA "Roadway Worker Protection" regulations is set forth at 49 C.F.R. 214.301. The regulation provides:

(a) The purpose of this subpart is to prevent accidents and casualties caused by moving railroad cars, locomotives or roadway maintenance machines striking roadway workers or roadway maintenance machines.

(b) This subpart prescribes minimum safety standards for roadway workers. Each railroad and railroad contractor may prescribe additional or more stringent operating rules, safety rules, and other special instructions that are consistent with this subpart.

(c) This subpart prescribes safety standards related to the movement of roadway maintenance machines where such movements affect the safety of roadway workers. This subpart does not otherwise affect movements of roadway maintenance machines that are conducted under the authority of a train dispatcher, a control operator, or the operating rules of the railroad.

¶22　　Lillian also relies on 49 C.F.R. 214.319 and 214.321. Section 214.319 states:

Working limits established on controlled track shall conform to the provisions of § 214.321 Exclusive track occupancy, or § 214.323 Foul time, or § 214.325 Train coordination. . . . Working limits established under any procedure shall, in addition, conform to the following provisions:

(a) Only a roadway worker who is qualified in accordance with § 214.353 of this part shall establish or have control over working limits for the purpose of establishing on-track safety.

(b) Only one roadway worker shall have control over working limits on any one segment of track.

. . .

49 C.F.R. § 214.319.

¶23　As referenced in 49 C.F.R. § 214.319, the method used by railroads for granting and controlling "exclusive track occupancy" is set forth in 49 C.F.R. § 214.321:

Working limits established on controlled track through the use of exclusive track occupancy procedures shall comply with the following requirements:

(a) The track within working limits shall be placed under the control of one roadway worker by either:

8

(1) Authority issued to the roadway worker in charge by the train dispatcher or control operator who controls train movements on that track,

(2) Flagmen stationed at each entrance to the track within working limits and instructed by the roadway worker in charge to permit the movement of trains and equipment into the working limits only as permitted by the roadway worker in charge, or

(3) The roadway worker in charge causing fixed signals at each entrance to the working limits to display an aspect indicating "Stop."

(b) An authority for exclusive track occupancy given to the roadway worker in charge of the working limits shall be transmitted on a written or printed document directly, by relay through a designated employee, in a data transmission, or by oral communication, to the roadway worker by the train dispatcher or control operator in charge of the track.

(1) Where authority for exclusive track occupancy is transmitted orally, the authority shall be written as received by the roadway worker in charge and repeated to the issuing employee for verification.

(2) The roadway worker in charge of the working limits shall maintain possession of the written or printed authority for exclusive track occupancy while the authority for the working limits is in effect.

(3) The train dispatcher or control operator in charge of the track shall make a written or electronic record of all authorities issued to establish exclusive track occupancy.

(c) The extent of working limits established through exclusive track occupancy shall be defined by one of the following physical features clearly identifiable to a locomotive engineer or other person operating a train or railroad equipment:

(1) A flagman with instructions and capability to hold all trains and equipment clear of the working limits;

(2) A fixed signal that displays an aspect indicating "Stop";

(3) A station shown in the time-table, and identified by name with a sign, beyond which train movement is prohibited by train movement authority or the provisions of a direct train control system.

(4) A clearly identifiable milepost sign beyond which train movement is prohibited by train movement authority or the provisions of a direct train control system; or

(5) A clearly identifiable physical location prescribed by the operating rules of the railroad that trains may not pass without proper authority.

(d) Movements of trains and roadway maintenance machines within working limits established through exclusive track occupancy shall be made only under the direction of the roadway worker having control over the working limits. Such movements shall be restricted speed unless a higher speed has been specifically authorized by the roadway worker in charge of the working limits.

¶24    BNSF argues that statutory construction begins with the text of the statute, or in this case, the regulation, and where the language is "plain, unambiguous, direct and certain," there is nothing left for the court to construe. Lillian argues that regulations must be read together and considered as a whole to further their overall purpose and intent.

¶25    We conclude that because FELA is a remedial statute and the specific purpose and intent of the FRA regulations is to "prevent accidents and casualties caused by moving railroad cars, locomotives or roadway maintenance machines striking roadway workers or roadway maintenance machines," we will review and construe the regulations as a comprehensive scheme of protection for railroad workers. Moreover, when more than one interpretation is possible, in order to promote justice and give effect to the purpose of the regulation, we will reject an interpretation that leads to an unreasonable or absurd result in

10

favor of another that leads to a reasonable result. *Hiett v. Missoula County Public Schools*, 2003 MT 213, ¶ 36, 317 Mont. 95, ¶ 36, 75 P.3d 341, ¶ 36.

¶26 Section 214.319 mandates that only one railroad worker shall have control over working limits on any one segment of track. In this case, that railroad worker was Holloway. The record shows that Holloway followed the detailed procedure for obtaining the track warrant that allowed his hy-rail vehicle to have exclusive track occupancy within the working limits defined in his warrant.

¶27 Section 214.321 requires that on-track safety be guaranteed through "exclusive track occupancy procedures" which establish working limits to be set forth in track warrants. There is no dispute that the procedures are "exclusive," or that the warrants categorically set the physical limits of exclusive track occupancy. To conclude that these regulations do not, however, require an employee to comply with and not exceed the provisions of the warrant, leads to an absurd construction. There would be absolutely no utility in imposing strict limits if violation of those strict limits was not prohibited. This Court has always refrained from interpreting statutes in such a way as would defeat their purpose. *American Linen Supply v. Dept. of Revenue* (1980), 189 Mont. 542, 545, 617 P.2d 131, 133. *See also Hawley v. Board of Oil and Gas Conservation,* 2000 MT 2, ¶ 13, 297 Mont. 467, ¶ 13, 993 P.2d 677, ¶ 13; *Missoula Rural Fire Dist. v. Missoula County* (1986), 222 Mont. 178, 182, 720 P.2d 1170, 1173. Were we to interpret the above regulations to impose strict limits but no obligation of compliance, the purpose of the regulations would be defeated. Moreover, the purpose and intent of the FELA would not be served. Accordingly, we conclude that the

11

District Court erred in concluding that violation of the working limits of the track warrant, which resulted directly in Woods' death, was not negligence *per se.*

¶28 Lillian further appeals the District Court's ruling allowing BNSF to argue to the jury that Woods was contributorily negligent. This ruling flowed directly from the District Court's erroneous conclusion that BNSF was not negligent *per se.* Under the FELA, no employee "shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." 45 U.S.C. § 53. This restriction against the use of contributory negligence as a defense has been extended to violation of regulations as well. *See Eckert v. Aliquippa & Southern R.R. Co.* (3rd Cir. 1987), 828 F.2d 183, 187 (violation of regulation promulgated pursuant to Federal Railroad Safety Act precluded use of contributory negligence). The caveat--that "[p]roof that the employee's own negligence was the *sole* cause of his or her injury is a valid defense because it eliminates the possibility that the regulatory violation contributed in whole or part to the injury"--is not applicable here. *Walden*, 975 F.2d at 364. It is undisputed that any alleged negligence on the part of Woods was not the *sole* cause of his death. It was error for the District Court to allow BNSF to argue contributory negligence.

¶29 Because we conclude that the District Court erred in its rulings on negligence *per se* and contributory negligence, it is not necessary that we address the last issue presented by Lillian.

**CONCLUSION**

12

¶30     For the foregoing reasons, we reverse the District Court's Decision and Order denying Woods's Motion for Partial Summary Judgment on the issue of negligence *per se*. Accordingly, we vacate the finding of contributory negligence and remand for a judgment reinstating the jury's award of $969,796.78 to Lillian.

/S/ PATRICIA O. COTTER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JIM RICE

13

Justice John Warner dissents.

¶31     I dissent.  The majority has erroneously construed FRA regulations.

¶32     The controlling principles missed by the Court are rather simple:  The statutes and regulations say to a railroad "thou shall" do what we say to promote safety, and if you do these things, you have followed the law.  Next, a railroad's Maintenance of Way Operating Rules says to its workers "thou shalt not" violate these rules for if you do, you may be injured or killed.  It is possible for a railroad to comply with the statutes and regulations and an employee may still be injured.  It is not possible for an employee to be injured without some violation of safety rules because they, in essence, say "don't get hurt."

¶33     Congress and the FRA have enacted statutes and regulations which must be followed to promote safety in the dangerous railroad industry.  The Court is correct that a violation of either the statutes or the regulations which causes an injury is a violation of law, constitutes negligence *per se*, and in such instance there can be no comparative fault assessed by the fact-finder.  *Bevacqua*, 289 Mont. at ¶ 83.  The Court acknowledges that BNSF followed the statutes and regulations.  ¶ 26.  BNSF, pursuant to 49 C.F.R. § 214.317, promulgated safety rules to provide on-track safety for its employees.  A violation of these safety rules can be careless, that is, negligent, but such is not negligence *per se*. Comparative fault is a partial defense.

¶34     The District Court, unlike this Court, understands the difference between a violation of regulations and a violation of safety rules.  It denied Woods' motion for partial summary judgment because it found "the alleged negligent conduct of Holloway was not a violation of the federal regulations cited by Plaintiff."  Holloway complied with both 49 C.F.R. §

14

214.319 and 321. For example, it was undisputed that Holloway was the sole roadway worker in control of track limits, as required by 49 C.F.R. § 214.321(a), and the extent of the working limits were clearly identifiable, as required under 49 C.F.R. § 214.321(c). He did not violate an applicable statute or regulation, no such violation caused injury to Woods, and BNSF is not negligent *per se.*

¶35 Holloway admittedly violated a BNSF Maintenance of Way Operating Rule which expressly prohibited him from going beyond the track warrant limits. Thus, BNSF was negligent, which it admitted. However, such negligence does not arise because of the violation of a regulation, but because of human error in violating a safety rule. Woods also violated this safety rule. Woods' fault must be compared to the fault of Holloway, which is what the jury did.

¶36 The Court acknowledges Holloway complied with the regulations because he "followed the detailed procedures for obtaining a track warrant that allowed his hy-rail vehicle to have exclusive track occupancy within the working limits defined in his warrant." ¶ 26. The Court then proceeds beyond the authorized legal limit and states that it would lead to an "absurd result" to conclude the regulations themselves do not require an employee to comply with and not exceed the provisions of the track warrant. The Court ignores the fact that these same Federal regulations explicitly provide, "[e]ach [railroad] . . . shall provide on-track safety for roadway workers . . . ." 49 C.F.R. § 214.317; and that such provisions are formally reviewed by the FRA to ensure that the rules comply with federal law. 49 C.F.R. § 214.307(b). Thus, by concluding regulations say the same thing as the railroad's safety rules, the Court eliminates the need for the safety rules and casually eliminates the

defense of comparative fault in FELA cases. Then, the Court boldly says that it expands FRA regulations to include the safety rules, thereby eliminating the contributory negligence defense, because it will not interpret statutes in such a way as to defeat their purpose. ¶ 27. My mind boggles at this sorcery.

¶37 Following the law would not lead to an absurd result as the majority concludes. The FRA regulations set forth the standard procedures that each railroad must follow for establishing track warrant limits. Each railroad is responsible for setting forth on-track safety procedures that are consistent with the federal regulations, but are specific to their own operations. BNSF had its on-track safety rules, one of which required all roadway workers to comply with track warrant instructions. Holloway complied with the regulations, but both Holloway and Woods failed to comply with the BNSF safety rule when they exceeded the track warrant limits. Therefore, there is no negligence *per se,* but the jury could find that both men were negligent and their negligence caused Woods' death.

¶38 The Court has ignored the rule of statutory [regulatory] construction that where the language of a statute is "plain, unambiguous, direct and certain," there is nothing left for the court to construe. *Curtis v. District Court* (1994), 266 Mont. 231, 235, 879 P.2d 1164, 1166. While under some circumstances it may be necessary to liberally construe Congressional language in order to avoid an obvious inequity, that is not the case here. The United States Supreme Court has clearly explained:

> [t]hat FELA is to be liberally construed, however, does not mean that it is a workers' compensation statute. We have insisted that FELA "does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur." And while "[w]hat constitutes negligence for the statute's purposes is a federal question," we have made clear that this federal question turns on

16

principles of common law: "[T]he [FELA] is founded on common-law concepts of negligence and injury, subject to such qualifications as Congress has imported into those terms[.]" Those qualifications, discussed above, are the modification or abrogation of several common-law defenses to liability, including contributory negligence and assumption of risk. Only to the extent of these explicit statutory alterations is FELA "an avowed departure from the rules of common law." [Citations omitted.]

*Consolidated Rail Corp. v. Gottshall* (1994), 512 U.S. 532, 543-44, 114 S.Ct. 2396, 2404, 129 L.Ed.2d 427.

¶39 In my view, if Congress had intended courts to liberally construe the statutory and regulatory language so as to infer a regulatory violation when a railroad worker is killed or injured, it would not have modified, but would have abrogated, contributory negligence as a defense, the same as it did with assumption of risk.

¶40 While it was Congress' intent in enacting FELA to shift part of the "human overhead" of doing business from the worker to the railroad, and to ensure the railroad industry would bear "some of the cost for the legs, eyes, arms, and lives which it consumed in its operations," it was not Congress' intent to place the entire burden on the railroad, except under those circumstances explicitly stated. *Consolidated Rail Corp.*, 512 U.S. at 542, 114 S.Ct. at 2404 (citing *Wilkerson v. McCarthy* (1949), 336 U.S. 53, 68, 69 S.Ct. 413, 420, 93 L.Ed. 497).

¶41 Because BNSF was not negligent *per se*, it was proper for the District Court to submit the question of contributory negligence to the jury. Title 45 U.S.C. § 53 only bars a defense of contributory negligence where the railroad has violated a safety statute or regulation.

¶42 It is wrong to hold that federal regulations preempted BNSF on-track safety rules where the federal regulations themselves explicitly required the railroad to adopt such rules,

17

and where the rules, even though more stringent, were not in conflict with the federal regulations. The District Court was not in error in allowing BNSF's expert witness to testify as to whether Woods violated such rules, because a qualified expert witness may offer his opinion as to the meaning of a company's internal rule and whether such rule has been violated. *See Mahan v. Farmers Union Cent. Exch., Inc.* (1989), 235 Mont. 410, 420, 768 P.2d 850, 857 (experts may "testify as to whether the company complied with or violated its own policies.") The court also did not err in allowing BNSF's lay witnesses to testify as to their understanding of the on-track safety rules. Lay witnesses may offer opinions based on their first-hand knowledge and perceptions. Rule 701, M.R.Evid. In this case, the lay witness testimony was based on the witness' first-hand experience in performing the same job as Woods. Additionally, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Rule 704, M.R.Evid.

¶43 For these reasons, I would affirm the judgment of the District Court.

/S/ JOHN WARNER

Chief Justice Karla M. Gray joins in the foregoing dissent.

/S/ KARLA M. GRAY