**STATE of Missouri, Respondent,**

v.

**Richard CREWS, Appellant.**

No. 71515.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 12, 1998.

Susan W. McGraugh, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cristi A. Ingalsbe, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Presiding Judge.

Defendant, Richard Crews, appeals from the judgment of the trial court entered on the jury's conviction of one count of burglary in the first degree, section 569.160 RSMo. (1994) and one count of felonious stealing, section 570.030.3(1). The trial court sentenced defendant to ten years imprisonment on the first-degree burglary count and seven years imprisonment on the stealing count. We affirm.

Viewing the record in the light most favorable to the jury's verdicts, the following evidence was adduced at trial. On the evening of October 13,1994 Gregory and Deborah

Koehler returned to their house in the Windsong Court Subdivision in O'Fallon, Mo. The Koehlers noticed that their 1985 GMC Sierra Classic was missing when they opened their garage door. As Mrs. Koehler called the police, Mr. Koehler went inside the house and noticed that someone had broken into the house through a sliding glass door. Mr. Koehler then began to examine the house and noticed several items missing, including a loaded .22 caliber rifle.

The day following the burglary, Courtney Hammonds and Diondrey Hardwick were arrested for driving the Koehlers' stolen Sierra Classic. Hammonds and Hardwick stated that they received the Sierra Classic from a man nicknamed "Cowboy" and his wife in exchange for a piece of cocaine. Both Hammonds and Hardwick identified defendant in a photo line-up as the man who gave them the Sierra Classic in exchange for the cocaine. The O'Fallon Police then searched defendant's residence and found several items that were taken from the Koehlers' home during the burglary. Defendant's brother-in-law later found the .22 caliber rifle that was stolen from the Koehlers' home in defendant's residence and turned the rifle over to the O'Fallon Police.

Defendant was charged with one count of burglary in the first degree and one count of felonious stealing. The jury returned guilty verdicts on both counts. The trial court entered judgment against defendant based on the jury's verdicts and sentenced defendant to ten years on the first-degree burglary count and seven years on the stealing count. This appeal follows.

In his first point on appeal, defendant asserts that the trial court erred in denying his motion for a directed verdict of acquittal on the first-degree burglary count. Defendant contends that the state failed to produce sufficient evidence that he was armed with a deadly weapon during the commission of the burglary. We disagree.

■ In reviewing an attack on the sufficiency of the evidence, we will affirm the trial court's judgment if there is sufficient evidence from which a reasonable juror may have found defendant guilty beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d

403, 405 (Mo. banc), *cert. denied* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). Also, we will review the record in the light most favorable to the state, accepting as true all evidence and inferences that support the jury's verdict and ignoring all evidence and inferences to the contrary. *Id.*

Section 569.160 states in relevant part:

A person commits the crime of burglary in the first degree. . .when in effecting entry or while in a building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:

(1) Is armed with explosives or a deadly weapon. . .

■ Defendant concedes that the state produced sufficient evidence that he stole a .22 caliber rifle from the Koehlers' home. However, defendant argues that the state failed to produce sufficient evidence that he was armed with a deadly weapon under section 569.160(1) because it failed to produce evidence that he either loaded the rifle or knew that it was loaded. The legislature has defined a deadly weapon as any firearm, **loaded or unloaded**. Section 556.061(10). (emphasis added). Thus, whether defendant loaded the rifle or knew that it was loaded is immaterial to whether he was armed with a deadly weapon.

■ Defendant also contends in his first point that the legislature intended the term "armed" in section 569.160(1) to mean more than stealing a firearm during a burglary. Defendant premises this argument on the fact that the legislature used the term "armed" instead of the word "steals" in the statute. We find this argument unpersuasive.

■ When construing a criminal statute, we must effectuate the legislature's intent by examining the plain language of the statute. *See State ex rel. Bulloch v. Seier*, 771 S.W.2d 71, 75 (Mo. banc 1989). Here, the legislature has not defined the term "armed". When the legislature has not defined a term, we glean its plain and ordinary meaning from its dictionary definition. *Asbury v. Lombardi*, 846 S.W.2d 196, 201 (Mo. banc 1993).

Webster's defines the term "armed" as equipped with a weapon. (Webster's Ninth New College Dictionary, 1991). Thus, under the plain language of the statute, a person is "armed" when he equips himself with a weapon for the purpose of stealing it. Accordingly, once defendant took possession of the Koehlers' .22 caliber rifle while burglarizing their home, he was "armed" for purposes of section 569.160(1). Therefore, the state produced sufficient evidence from which a reasonable juror could have found beyond a reasonable doubt that defendant was armed with a deadly weapon. Defendant's first point is denied.

Defendant asserts in his second point that the trial court erred in allowing the prosecutor to impeach him by producing evidence of a prior arrest. We disagree with defendant's contention.

Defendant testified on direct examination that he had never been in the Windsong Subdivision, the subdivision where the Koehlers resided. On cross-examination, the prosecutor asked defendant if he had ever been in the Windsong Subdivision and defendant again responded that he had not. The prosecutor then questioned defendant if he had ever been in the subdivision with his wife and another woman while managing an "escort" service. Defendant answered by asserting that he had never been involved with an escort service and that he had never been in the Windsong Subdivision.

Defendant, on redirect, explained that he had been charged with pandering for allegedly managing an escort service. However, defendant testified that the state dismissed the charge and again asserted that he had never been in the Windsong Subdivision. The state, in its rebuttal, called Detective Richard Morrell of the O'Fallon Police Department as a witness. Detective Morrell testified that defendant admitted that he had been in the Windsong Subdivision a few months prior to the burglary when he took his wife and another female to a "John" in the subdivision to perform sex acts.

The trial court has broad discretion in determining the scope and extent of cross-examination. *State v. Jackson*, 925 S.W.2d 856, 864 (Mo.App.1996). Accordingly, we will not reverse the trial court's ruling unless the trial court abuses that discretion. *Id.*

It is true that the state cannot impeach a defendant's general character by introducing evidence of a prior arrest, investigation or criminal charge. *State v. Campbell*, 868 S.W.2d 537, 539 (Mo.App.1993). However, the state may inquire into a defendant's prior arrest if it was within the "fair purview" of the defendant's direct examination and is both logically and legally relevant to the case. *State v. Gray*, 887 S.W.2d 369, 386 (Mo. banc 1994); Section 546.260.

Here, defendant testified on direct examination that he had never been in the subdivision where the burglary took place. Thus, the fact that defendant had admitted that he had been in the subdivision a few months prior to the burglary while allegedly providing a man with two prostitutes was within the purview of defendant's direct examination.

We also find that the evidence of the arrest was both legally and logically relevant. Evidence is logically relevant if it is probative to the disposition of a fact in issue. *Gray*, 887 S.W.2d at 386. Evidence is legally relevant if its probative value outweighs its prejudicial effect. *Id.* The fact the defendant had actually been in the subdivision prior to the burglary is highly probative in that it demonstrates defendant was familiar with the subdivision and had the opportunity to commit the crime. Furthermore, this evidence had a minimal prejudicial effect. The state did not introduce the evidence of defendant's prior arrest to impeach his general credibility but rather introduced it to impeach him on a specific question that he had put into issue. *See Campbell*, 868 S.W.2d at 540. The trial court did not abuse its discretion in allowing the state to introduce evidence of defendant's prior arrest. Defendant's second point is denied.

The judgment of the trial court is affirmed.

CRANDALL and KAROHL, JJ., concur.