STATE of Missouri, Plaintiff–
Respondent,

v.

Christopher K. SALES, Defendant–
Appellant.

No. 28627.

Missouri Court of Appeals,
Southern District,
Division Two.

June 26, 2008.

Ellen H. Flottman, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Dora A. Fichter, Asst. Atty. Gen., Jefferson City, MO, for respondent.

GARY W. LYNCH, Chief Judge.

Following a jury trial, Christopher K. Sales ("Defendant") was convicted on two counts of burglary in the first degree (section 569.160), five counts of burglary in the second degree (section 569.170), and five counts of stealing (section 571.030).[1] Defendant was sentenced to twelve ten-year terms of imprisonment, with all sentences ordered to run concurrent with each other.

Defendant appeals his convictions and sentences on the two counts of burglary in the first degree, contending that the trial court erred in overruling his motion for judgment of acquittal, as "the state failed to prove beyond a reasonable doubt that Defendant was 'armed' with a deadly weapon within the meaning of Section 569.160(1) in either Count I or Count II, since the state did not establish that the firearms taken from the burglaries were easily accessible and readily available for use as weapons, rather than simply stolen items." Defendant asks this court to reverse his convictions for burglary in the first degree and impose convictions for burglary in the second degree. We affirm.

### Factual Background

Upon a challenge to the trial court's denial of a motion for acquittal, we review to determine if the State presented sufficient evidence to make a submissible case. *State v. Granger*, 966 S.W.2d 27, 29 (Mo. App.1998). "In determining whether the evidence is sufficient to support a conviction, we accept as true all evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to

---

1. References to statutes are to RSMo 2000,     unless otherwise indicated.

the contrary." *Id.* Viewed in that light the evidence at trial established the following:

Sometime during the late night hours on November 21, 2006, or the early morning hours of November 22, 2006, Shawn Bowen, Johnna Melcher, and James Reno drove in Melcher's car to Kansas City and picked up Defendant and another person who was only identified as Josh. They drove to a hunting compound, which consisted of a cabin, a house and various other travel trailers and recreational vehicles, located on some rural acreage in Cedar County, arriving there around 3:00 a.m. Using a tire iron, they busted the chain on the gate to the property to gain access. When they reached the actual compound located on the acreage, Defendant entered the cabin from the back door, opened the front door, and turned on the lights. Melcher stayed in her car, and Bowen stood watch outside. Reno decided they needed a truck or a van in order to transport the stolen items, and Bowen and Melcher drove Reno into Humansville, where Reno stole a blue Chevy Astro minivan.

When they returned to the hunting camp with the van, all of the lights were on in the house and trailers, and Defendant and Josh "already had a bunch of stuff sitting outside." They backed the van up to each residence, and Bowen, Reno, Josh, and Defendant loaded the van with the stolen goods. They loaded the van and Melcher's car with as much as they could fit, which included two firearms stolen from the cabin and three firearms stolen from the house.

Defendant was eventually apprehended, arrested and charged as noted above. The amended information against Defendant upon which he was tried alleged as to the two counts of burglary in the first degree that "defendant or another participant in the crime was armed with a deadly weapon[.]" Count I alleged that Defendant un-

lawfully entered the premises of [the owner of the house] and, in fleeing therefrom, he or another participant was armed with a shotgun. Count II alleged that Defendant unlawfully entered the premises of [the owner of the cabin] and that he or another participant left the premises armed with a rifle. Defendant appeals his convictions on these two counts.

### *Discussion*

In his single point relied on, Defendant challenges the decision in *State v. Crews*, 968 S.W.2d 763 (Mo.App.1998), where the Eastern District held that a criminal defendant was considered "armed with a deadly weapon," as provided under section 569.160(1), when he took possession of the victims' loaded rifle for the purpose of stealing it after unlawfully entering their home. *Id.* at 766. Crews contended that the state failed to prove that he either loaded the rifle or that he knew the rifle was loaded. The Eastern District utilized a dictionary definition in defining the term "armed" to mean "equipped with a weapon" and held that, based upon the definition of "deadly weapon," in section 569.061(10) ("any firearm, loaded or unloaded"), whether or not the rifle was loaded was immaterial to a determination of whether the defendant was "armed with a deadly weapon." Thus, deciding that "once defendant took possession of the Koehlers' .22 caliber rifle while burglarizing their home, he was 'armed' for purposes of section 569.160(1)." *Id.*

"Section 569.160 defines burglary in the first degree as entering or remaining unlawfully in a building or inhabitable structure, with the intent to commit a crime therein, when one or more of three circumstances also exists: (1) the perpetrator is armed with an explosive or deadly weapon, (2) he or she causes or threatens immediate physical injury to a non-participant in

the crime, or (3) a non-participant in the crime is present in the building when the perpetrator effectuates entry." *State v. Carpenter*, 109 S.W.3d 718, 723 (Mo.App. 2003). "Deadly weapon" is defined under section 556.061(10) as "any firearm, loaded or unloaded, or any weapon from which a shot, readily capable of producing death or serious physical injury, may be discharged, or a switchblade knife, dagger, bill, blackjack or metal knuckles[.]"

■ One of the elements the State was required to prove was that Defendant was "armed." *Crews* held that "a person is 'armed' when he equips himself with a weapon for the purpose of stealing it." *Crews*, 968 S.W.2d at 766. Pursuant to the decision in *Crews*, Defendant here was "armed" with a deadly weapon when he stole the firearms during the burglary in Cedar County, and the State presented sufficient evidence to demonstrate that Defendant or another participant in the break-in stole firearms.

However, Defendant urges "that *Crews* was wrongly decided and should not be followed." Defendant contends that applying a dictionary definition of "armed" to find that stealing a deadly weapon during a burglary constitutes being "armed with a deadly weapon," is an illogical result. As support, Defendant points out that section 570.030 provides that "[s]tealing a firearm is itself punished as a class C felony." Further, under section 569.160, burglary is aggravated "to first degree because the perpetrator's actions are more aggravated: there is someone in the house or the perpetrator brings a weapon to the burglary." Defendant contends that "[s]tealing a firearm cannot be what the legislature intended to aggravate a burglary." Defendant asks this Court, contrary to the holding in *Crews*, to "reverse his convictions in Counts I and II for burglary in the first degree, impose convictions of burglary in

the second degree, and remand for re-sentencing on those counts."

As support, Defendant cites to cases outside of Missouri. In *State v. Befford*, 148 Ariz. 508, 715 P.2d 761 (1986), the Supreme Court of Arizona reduced a first-degree burglary conviction and remanded the case for re-sentencing on a second-degree burglary conviction, finding that the defendant was not "armed" when he placed a shotgun in a zippered case next to the door with other items he intended to steal, as such a situation stretched the "definition of 'armed' beyond that contemplated by either the legislature or this court." *Id.* at 763 (no issue or distinction was made from the fact that the firearm was in a zippered case). Before the decision in Befford, Arizona courts specifically included a firearm in its definition of "deadly weapon," and the definition of "firearm" included "any loaded or unloaded pistol, revolver, rifle, shotgun[.]" *Id.* at 762. The *Befford* court ultimately decided: "In order to be 'armed' within our burglary statute, a defendant must possess the item considered a deadly weapon or dangerous instrument in such a manner as to indicate his willingness or present ability to use it as a 'weapon.'" *Id.* The supreme court reasoned that there was "no evidence that the defendant possessed the gun as a 'weapon'; rather, he possessed it in the same status as he possessed the television sets, jewelry and various other items of value stacked near the door. He possessed them as stolen goods or loot." *Id.* To hold otherwise, the Arizona court found, would elevate almost every burglary to first degree, where Arizona's definition of "dangerous instrument" is "anything that under the circumstances in which it is used, ... is readily capable of causing death or serious physical injury." Conceivably, the Court reasoned, a tool, a lamp, a baseball bat, and most household

items could be used as a deadly weapon. *Id.*

We do not find *Befford* persuasive because the Arizona burglary statute differs in one significant aspect from Section 569.160. The Arizona statute elevates burglary from second to first degree if the perpetrator is "armed with explosives, a deadly weapon *or a dangerous instrument* [.]" *Id.* (emphasis added). Section 569.160(1) provides for such elevation if armed with an explosive or deadly weapon, but omits any reference to a dangerous instrument. Therefore, the *Befford* court's construction of the meaning of "armed with a deadly weapon" as requiring that a deadly weapon be used as a weapon based upon the Arizona statute's classification of a dangerous instrument by its use, has no applicability to the construction of section 569.160(1).

In addition we also note that *Befford,* according to another case cited by Defendant (*State v. Ray,* 316 Mont.354, 71 P.3d 1247, 1255 (2003)),[2] has been superseded by a subsequent amendment to Arizona's burglary statute "to specifically allow mere possession of an unloaded firearm to qualify for the elevated burglary charge by changing the statutory language from 'armed' to 'knowingly possess.' " *Ray,* 71 P.3d at 1255, *citing State v. Tabor,* 184 Ariz. 119, 907 P.2d 505, 506 (App.1995). Thus, *Befford* is no support here.

The Montana Supreme Court discussed Missouri's holding in *Crews* in *State v. Ray, supra.* There, the defendant had been charged with aggravated burglary under a Montana statute similar to Missouri's first-degree burglary statute, but for the element of "armed with a deadly weapon." Missouri defines "deadly weapon," in part, as "any firearm, loaded or unloaded[.]" Section 556.061(10). Montana's aggravated burglary statute provided only that "in effecting entry or in the course of committing the offense or in immediate flight thereafter," defendant be "armed with ... a weapon." *Ray,* 71 P.3d at 1253. Montana defines "weapon," in part, as "an instrument, article, or substance that, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury." *Id.* at 1254.

Montana's statutes provided no definition of "armed." In reviewing other jurisdictions' definitions of the term, Montana's supreme court found general agreement throughout many jurisdictions that a burglar is considered "armed" when he or she steals a loaded firearm, "because the weapon is readily accessible and available for use." *Id.* at 1256. However, where a firearm is unloaded the Montana court found there was considerable disagreement among the jurisdictions. Significantly, though, in certain states such as Missouri where an unloaded firearm qualifies "a defendant as armed with a weapon, the statutory definitions are generally designed to specifically include an unloaded firearm as a deadly weapon." *Id.*

The decision in *Ray* turned on the fact that "Montana's statutory scheme does not specifically define weapons so as to single out either firearms or deadly weapons[,]" thus the court could not "agree that a defendant who steals an unloaded firearm has a weapon readily accessible and available for use under the plain language of the statute." *Id.* The Montana court held that the prosecution must prove intent to use an unloaded firearm as a weapon in order to establish that the defendant was

---

**2.** Overruled on other grounds unrelated to the issues in this case by *State v. Swann,* 337

Mont. 326, 160 P.3d 511 (2007).

"armed with a weapon" under Montana law. Because of the differences in the statutory provisions involved, we, likewise, do not find *Ray* persuasive.

Defendant also cites to a recent Washington Supreme Court case, *State v. Brown,* 162 Wash.2d 422, 173 P.3d 245 (2007), where the defendant was convicted by the trial court on an enhanced first-degree burglary charge on evidence that the defendant removed an unloaded rifle from the victim's closet and placed it on a bed before the sound of victim's arrival home interrupted the burglary, at which time defendant and his accomplice fled. The issue on appeal was whether evidence of a weapon being moved during a burglary was sufficient to establish that the defendant was armed. *Id.* at 249. The Washington court found that where there was no evidence that the defendant handled the rifle in the course of committing the crime "in any manner indicative of an intent or willingness to use it in furtherance of the crime[,]" the evidence was not sufficient to establish that the defendant was armed. *Id.* The court found, in that case, that the "weapon was merely loot, and not there to be used." *Id.* at 251.

However, *Brown* is easily distinguishable from the case at bar, for the reason that Washington's jurisprudence, in contrast with Missouri's, provides there must be evidence that the weapon "is easily accessible and readily available for use for either offensive or defensive purposes" in order to qualify a defendant as being armed with a deadly weapon. *Id.* at 249. Additionally, in Washington, the evidence must establish "a nexus between the defendant, the crime, and the weapon." *Id.* "To apply the nexus requires analyzing 'the nature of the crime, the type of weapon, and the circumstances under which the weapon is found.'" *Id., quoting State v. Schelin,* 147 Wash.2d 562, 570, 55 P.3d 632. Missouri does not require this analysis, and, thus, *Brown* is not persuasive.

■■■ In affirming Defendant's first-degree burglary conviction pursuant to the Eastern District's decision in *Crews,* we note that in a determination of the evident purpose of a statute, appellate courts may consider the history of the statute, circumstances surrounding its enactment, and any social problems its enactment was intended to address. *State v. Daniel,* 103 S.W.3d 822, 826 (Mo.App.2003). "There is a presumption that legislation is enacted 'with a view to the welfare of the community.'" *State v. Moriarty,* 914 S.W.2d 416, 423 (Mo.App.1996) (quoting *State ex rel. Mo. Power & Light Co. v. Riley,* 546 S.W.2d 792, 796 (Mo.App.1977)). Examining the statute in this light, "one of the evident purposes behind the first-degree burglary statute is to increase the penalty for someone who puts an innocent in harm's way during a burglary." *State v. Washington,* 92 S.W.3d 205, 209 (Mo.App. 2002), *citing State v. Northcutt,* 598 S.W.2d 130, 132 (Mo. banc 1980).[3] Taking possession of a deadly weapon at any time during the course of a burglary substantially increases the risk of putting an innocent in harm's way.

■■■ As Defendant notes, section 570.030 makes the unlawful taking of any firearm, regardless of its value, a class C

---

**3.** Although the discussion in *Washington* centers on subsection (3) of section 569.160.1, where "[t]here is present in the structure another person who is not a participant in the crime[,]" it is appropriate here in determining the intent behind the legislation. *See State v. Knapp,* 843 S.W.2d 345, 347 (Mo. banc 1992)

("reviewing court should take into consideration statutes involving similar or related subject matter when those statutes shed light on the meaning of the statute being construed[.]"). *See also State v. Rousseau,* 34 S.W.3d 254, 260 (Mo.App.2000).

felony. However, we disagree with Defendant's contention that this section preempts the enhancement of burglary by stealing a deadly weapon. Increasing the penalty for a burglary involving the theft of a firearm comports with the purpose of lessening the risk of putting innocent people in harm's way during that burglary. See *id.*

Looking outside of Missouri, we are further bolstered in our opinion that, considering the public safety concerns behind the legislation, the holding in *Crews* correctly and logically discerned and applied the intent underlying section 569.160.1(1). The legislative intent embodied in such a statute is "aimed at deterring both the commission of this type of criminal offense, i.e. stealing guns, and the possession or use of firearms during the perpetration of a burglary." *State v. Luna*, 99 N.M. 76, 653 P.2d 1222, 1223 (App.1982) (holding that defendant was armed with a deadly weapon when he stole unloaded guns). "When a defendant has in his possession a firearm, 'the victim is placed in fear and cannot be expected to inquire into the condition of the gun. The danger remains that the reaction by the victim or some third person to the appearance of the gun will cause harm to befall someone[.]' " *Id., quoting People v. Jackson*, 92 Cal.App.3d 899, 155 Cal.Rptr. 305 (1979). In addition:

> Crimes involving violence or use of firearms are among those most abhorrent to our society. The rising number of offenses wherein firearms have been used or victims assaulted with deadly weapons was obviously an important factor bringing about the passage of the aggravated burglary statute. Clearly, by enhancing the penalty for burglary while armed with a deadly weapon, the legislature intended to deter potential criminals from the use or possession of firearms . . . which escalate the possibility of violence.

*Luna,* 653 P.2d at 1224.[4] Defendant's point is denied.

### Decision

The trial court's judgment is affirmed.

RAHMEYER and BURRELL, JJ., concur.

**4.** For further support for affirming Defendant's conviction, *see also Pardue v. State,* 571 So.2d 333 (Ala.1990); *Wesolic v. State,* 837 P.2d 130 (Alaska App.1992); *People v. Loomis,* 857 P.2d 478 (Colo.App.1992); *Hardee v. State,* 534 So.2d 706 (Fla.1988); *Meadows v. Commonwealth,* 551 S.W.2d 253 (Ky.App. 1977); *Hayes v. Commonwealth,* 698 S.W.2d 827 (Ky.1985); *State v. Merritt,* 247 N.J.Super. 425, 589 A.2d 648 (1991); *State v. McCaskill,* 321 S.C. 283, 468 S.E.2d 81 (App. 1996); *Britt v. State,* 734 P.2d 980 (Wyo. 1987).