STATE of Missouri, Respondent,

v.

Dale S. OLTEN, Jr., Appellant.

Nos. WD 71482, WD 71483.

Missouri Court of Appeals,
Western District.

Nov. 23, 2010.

Margaret M. Johnston, Assistant State Public Defender, Columbia, MO, for Appellant.

Chris Koster, Attorney General, Jamie Pamela Rasmussen, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before Division II: JAMES EDWARD WELSH, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

MARK D. PFEIFFER, Judge.

Following a jury trial in the Circuit Court of Cole County ("trial court"), Dale Olten, Jr. ("Olten"), was convicted on one count of burglary in the first degree, § 569.160,[1] and one count of burglary in the second degree, § 569.170, and was sentenced to two concurrent seven-year prison sentences. Olten appeals his conviction of burglary in the first degree, contending that the trial court erred in overruling his motion for judgment of acquittal, as he claims the State failed to prove beyond a reasonable doubt that Olten or Jesse Patterson ("Patterson") were "armed" with a deadly weapon during their flight from the burglary. Olten asks this court to reverse his conviction for burglary in the first degree and impose a conviction for burglary in the second degree. We reject Olten's argument on appeal and affirm the judgment below.

## Factual and Procedural Background

Viewing the record in the light most favorable to the jury's verdict,[2] the following evidence was established at trial:

On January 16, 2009, Olten, Patterson, and a man named Jeremy went to a home[3] on Route N in Cole County with the intent to burglarize the residence. Olten and Jeremy broke glass out of a basement door and entered the home. Once all three men were inside, Olten went to a closet where he found an AR–15 rifle and a Glock pistol, Patterson located a flat-screen television, and Jeremy rummaged through jewelry. Olten and Jeremy carried the guns and jewelry to the car before returning inside to help Patterson remove the television. In all, the three men stole several items from the home, including a laptop, a camera, an M–4 rifle, two holsters, magazines for the weapons, and ammunition. After the burglary, the three men took the sto-

---

1. All statutory references are to Revised Statutes of Missouri (2000) unless otherwise noted.

2. See State v. Moyers, 266 S.W.3d 272, 275 (Mo.App. W.D.2008) ("This court considers the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict, disregarding all contrary evidence and inferences.").

3. The home belonged to E. and J. Delgado.

len items back to the home of Olten's father.

On February 27, 2009, officers from both Cole and Miller Counties received word of a suspicious vehicle parked in front of a home[4] near the border between Cole and Miller Counties. The car fit the description of a vehicle for which the officers were looking. Before the deputies could arrive, witnesses saw two men run from the house. When officers arrived, they found two driver's licenses in the car, one belonging to Olten and another to Patterson. A search for the men promptly ensued. Patterson was eventually apprehended and taken in for questioning regarding the burglaries.

Patterson admitted that he, Olten, and Olten's father had burglarized the Cotton home. Based on this information, officers secured a search warrant for Olten's father's home. During that search, officers recovered items that had been stolen from the Delgado burglary in January. A few days later, officers located both Olten and his father hiding out in an apartment in Russellville, Missouri.

■ Olten was arrested and charged with burglary in the first degree for the burglary of the Delgado home and burglary in the second degree for the burglary of the Cotton home. By agreement, the two Cole County circuit cases were consolidated for trial.[5] At the close of the evidence, the trial court overruled Olten's motion for acquittal. Subsequently, the jury found Olten guilty on both counts. The trial court denied Olten's motion for a new trial and sentenced him to two concurrent seven-year prison terms. This timely appeal follows.[6]

## Standard of Review

Upon a challenge to the trial court's denial of a motion for acquittal, we review to determine if the State presented sufficient evidence from which a reasonable juror may have found the defendant guilty beyond a reasonable doubt. *State v. Crews*, 968 S.W.2d 763, 765 (Mo.App. E.D. 1998) (citing *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993)). In determining whether the evidence is sufficient to support a conviction, we accept as true all evidence and inferences in a light most favorable to the verdict and disregard all evidence and inferences to the contrary. *State v. Sales*, 255 S.W.3d 565, 566–67 (Mo.App. S.D.2008) (quoting *State v. Granger*, 966 S.W.2d 27, 29 (Mo. App. E.D.1998)). However, this court "may 'not supply missing evidence or give the [State] the benefit of unreasonable, speculative or forced inferences.'" *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001) (quoting *Bauby v. Lake*, 995 S.W.2d 10, 13 n. 1 (Mo.App. E.D.1999)).

## Analysis

■ "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of

---

4. The home was occupied by John Cotton.

5. The first-degree burglary case (Case No. 09AC–CR01283) was denominated Count I, and the second-degree burglary case (Case No. 09AC–CR00710) was denominated Count II.

6. While Count I and Count II were separately appealed, assigned case numbers (WD71482 and WD71483, respectively), and consolidated by this court (WD71482), Olten fails to make any mention of Count II in his appellate brief and therefore abandons Count II on appeal. Rule 30.20; *see, e.g., O'Neal v. State*, 766 S.W.2d 91 (Mo. banc 1989); *Herron v. State*, 498 S.W.2d 530, 531 (Mo.1973); *State v. Johnson*, 362 Mo. 833, 245 S.W.2d 43, 49 (1952). Consequently, Count I is the only subject of this appeal.

every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). It is the State's burden to prove every element of the crime beyond a reasonable doubt. *State v. Seeler*, 316 S.W.3d 920, 925 (Mo. banc 2010). To prove burglary in the first degree, the State must establish that the defendant:

> knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or *while in the building* or inhabitable structure or *in immediate flight therefrom*, he or another participant in the crime:
>
> (1) Is *armed with* explosives or *a deadly weapon* or;
>
> (2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or
>
> (3) There is present in the structure another person who is not a participant in the crime.

§ 569.160.1 (emphasis added).

Olten argues that the trial court erred in overruling his motion for acquittal at the close of evidence and his motion for a new trial because the State failed to prove beyond a reasonable doubt that Olten or Patterson was "armed" with a deadly weapon under section 569.160. Olten contends that mere possession of a stolen gun cannot satisfy the "armed with a deadly weapon" requirement of section 569.160; thus, the State failed to present sufficient evidence to secure a conviction of Olten under the first-degree burglary statute. Olten further alleges that even if mere possession can constitute "armed with a deadly weapon" under section 569.160, there is still insufficient evidence to prove he or Patterson actually carried the weapons to the car, which the verdict director specifically required.[7] Olten claims that Patterson's testimony only established that the weapons were removed from the Delgado home. It does not indicate how or by whom the guns were taken out of the home.

### Armed with a Deadly Weapon

■ Olten contends that mere possession of a stolen gun cannot constitute "armed with a deadly weapon," within the meaning of section 569.160. He attempts to avoid the application of Missouri law by arguing that two Missouri cases, which held that stealing a firearm can be used to enhance a burglary conviction, were wrongly decided because they do not strictly construe the statute against the State.

The first case Olten asks us to disregard is *State v. Crews*, 968 S.W.2d 763 (Mo.App. E.D.1998). In *Crews*, the court held that a criminal defendant was considered "armed

---

7. Drafted pursuant to section 569.160, the first-degree burglary verdict director stated, in pertinent part:

   As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
   First, that on or about January 16, 2009, in the County of Cole, State of Missouri, the defendant knowingly entered or remained unlawfully in an inhabitable structure located at 10109 Route N, and owned and possessed by E. and J. Delgado, and

   Second, that defendant did so for the purpose of committing the crime of stealing therein, and
   Third, that while the defendant was in immediate flight from the inhabitable structure, he or Jesse Patterson was *armed* with a deadly weapon, and
   Fourth that Jesse Patterson was a participant with the defendant in the commission of the offense,
   then you will find the defendant guilty under Count I of burglary in the first degree. (Emphasis added.)

with a deadly weapon," under section 569.160.1, when he unlawfully entered the victim's home and took possession of the victim's loaded rifle with the purpose of stealing it. *Id.* at 766. The defendant argued that the "legislature intended the term 'armed' in section 569.160(1) to mean more than stealing a firearm during a burglary." *Id.* at 765. To determine the legislature's intent, the court used the plain language of the statute and held that under the plain and ordinary meaning "a person is 'armed' when he equips himself with a weapon for the purpose of stealing it." *Id.* at 765–66.

The second case Olten asks us to disregard is *State v. Sales*, 255 S.W.3d 565 (Mo.App. S.D.2008). In *Sales*, the defendant and his accomplices stole firearms during a burglary. The court agreed with *Crews* and applied the rule that defendant was "armed" with a deadly weapon when he stole firearms during the burglary and the State presented sufficient evidence to demonstrate that the defendant or another participant in the break-in stole firearms. *Id.* at 568. The court reasoned that "[i]ncreasing the penalty for a burglary involving the theft of a firearm comport[ed] with the purpose of lessening the risk of putting innocent people in harm's way during that burglary." *Id.* at 571.

Olten argues that the analysis under *Crews* and *Sales* would allow a conviction of burglary in the first degree from the mere possession of a deadly weapon stolen during the course of the burglary. He claims that if the legislature had intended such a broad interpretation, then it would have used the word "possessed" rather than "armed." Olten insists the word "armed" be interpreted to mean that the burglars used the weapon either to gain entry or to aid in flight. Olten cites a myriad of case law from various jurisdictions in support of his argument.[8] We, however, find Olten's arguments unpersuasive because the courts in *Crews* and *Sales* properly construed and applied section 569.160.[9]

The primary goal of statutory construction is to "give effect to legislative intent as reflected in the plain language of the statute." *State v. Moore*, 303 S.W.3d 515, 520 (Mo. banc 2010) (citing *State v. Salazar*, 236 S.W.3d 644, 646 (Mo. banc 2007)). If the plain language of the statute is ambiguous, the statute must be construed in favor of the defendant. *Winfrey v. State*, 242 S.W.3d 723, 725 (Mo. banc 2008). However, this is only true if all other judicial canons of construction have been exhausted. *Denbow v. State*, 309 S.W.3d 831, 834 (Mo.App. W.D.2010).

■ When interpreting statutes, courts should rely on the definitions of words given by the legislature. However, when the legislature has not done so, we must give meaning to each word or phrase in the statute. *Moore*, 303 S.W.3d at 520. Here, the legislature has not defined the term "armed" for purposes of section 569.160. Therefore, this court will look to

---

8. Olten cites several cases including *State v. Befford*, 148 Ariz. 508, 715 P.2d 761, 763 (1986) (in order to be "armed" during a burglary, the defendant must "possess the item considered a deadly weapon or dangerous instrument in such a manner as to indicate his willingness or present ability to use it as a 'weapon.' "); and *State v. Brown*, 162 Wash.2d 422, 173 P.3d 245, 249 (2007) (a person is armed for purposes of first-degree burglary enhancement only if the firearm is easily accessible and readily available for use). For a discussion as to why we do not find any of the cited cases persuasive, see *State v. Sales*, 255 S.W.3d 565, 568–70 (Mo. App. S.D.2008).

9. Because we find *Crews* and *Sales* were properly decided, we incorporate much of the analysis from those cases in our ruling today.

the plain and ordinary meaning of those words as defined in the dictionary. *Id.* (citing *State v. Oliver,* 293 S.W.3d 437, 446 (Mo. banc 2009)) ("In the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary."). The term "armed" means "furnished with weapons." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 119 (1993). "Deadly weapon" is defined by the legislature as "any firearm, loaded or unloaded." § 556.061(10), RSMo Cum.Supp.2008. Accordingly, the plain and ordinary meaning of the phrase "armed with a deadly weapon" is "to have or carry a gun." Nothing in this definition requires people to bring a gun to a burglary or actually use a gun during the burglary, as urged by Olten. Moreover, the plain and ordinary meaning of the phrase in no way creates an ambiguity.

This interpretation of "armed with a deadly weapon" is also consistent with one of the obvious purposes behind the first-degree burglary statute—" 'to increase the penalty for someone who puts an innocent in harm's way during a burglary.' " *Sales,* 255 S.W.3d at 570 (quoting *State v. Washington,* 92 S.W.3d 205, 209 (Mo.App. W.D. 2002)). "When a defendant has in his possession a firearm, 'the victim is placed in fear and cannot be expected to inquire into the condition of the gun. The danger remains that the reaction by the victim or some third person to the appearance of the gun will cause harm to befall someone[.]' " *Id.* (quoting *State v. Luna,* 99 N.M. 76, 653 P.2d 1222, 1223 (1982)). By increasing the penalty for burglary when armed with a deadly weapon, the legislature intended to deter criminals from possessing deadly weapons during a burglary so as to prevent harm to innocent persons. Consequently, once Olten carried the AR–15 rifle, the Glock pistol, and the M–4 rifle to the car during the burglary of the Delgado

residence, he was "armed" within the meaning of section 569.160(1); thus, the trial court properly permitted the jury to consider the verdict director for burglary in the first degree. *See Crews,* 968 S.W.2d at 766.

### Sufficiency of the Evidence

█ As discussed above, when determining whether evidence was sufficient to support a conviction, we accept as true all evidence and inferences in the light most favorable to the verdict and disregard all evidence and inferences to the contrary. *Sales,* 255 S.W.3d at 566–67. Patterson's testimony was integral in securing Olten's conviction, the sufficiency of which is contested by Olten. In pertinent part, Patterson testified that:

A. [Olten] entered the bedroom, went to the closet, and then in the closet there was an AR 15 assault rifle and a 40 cal Glock.

. . . .

A. And then there was bunch of jewelry and different things that Jeremy was going through. . . . Then I entered the living room and proceeded to grab a big screen T.V. . . ., but I couldn't get it by myself, so they went and took everything to the car that they had, and then came back. . . .

Patterson's testimony does not explicitly establish which of the three men carried the weapons to the car. Olten claims that because Jeremy's name was not included in the verdict director and because the State did not submit accessory liability in the jury instruction, there is insufficient evidence to prove he or Patterson was armed with the weapons, as the verdict director required.

Olten's argument, however, completely ignores the standard of review in this case. When Patterson's testimony is viewed in

the light most favorable to the verdict, even though Patterson did not explicitly testify that Olten carried the weapons to the car, Patterson's testimony created a reasonable inference that after Olten found the weapons in the closet, he took them to the car before returning to help carry the television. Likewise, it is reasonable to infer that after Jeremy looked through the jewelry, he took the jewelry to the car before returning to help carry the television. Consequently, the evidence from which the jury found that Olten was armed with a deadly weapon during his flight from the burglary was neither unreasonable nor speculative.

### Conclusion

After reviewing the evidence in the light most favorable to the verdict, we find that the State presented sufficient evidence from which a reasonable juror could have found Olten guilty beyond a reasonable doubt of burglary in the first degree. We, therefore, affirm Olten's conviction of burglary in the first degree and, consequently, affirm the judgment below.

JAMES EDWARD WELSH, Presiding Judge, and KAREN KING MITCHELL, Judge, concur.